## No. 6048.

## State of Louisiana ex rel. P. J. Martin vs. the Bienville Oil Works Company et al.

In this case relator is a large stockholder in the Bienville Oil Works Company. He has, in the very nature of things, and upon principles of equity, good faith, and fair dealing, the right to know how the affairs of the company are conducted—whether the capital, of which he has contributed so large a share, is being prudently and profitably employed, or otherwise. He shows that he has been denied this right by the Board of Directors, who assume that the clause in the charter of the company which declares that "all the powers of the corporation shall be exercised by a Board of Directors," deprives him of his individual right to know, from personal inspection of the books and papers of the company, the state of its business affairs.

This court is not prepared to say that the above-stated assumption is logical and legally deducible from the clause referred to in the charter, and does not see that the existence of the individual right of one of the stockholders, claimed by the relator in this case, is incompatible with the power vested in the Board of Directors. If the individual right contended for does not remain, it has been extinguished by some law, clear and explicit in its terms, or by necessary and certain implication. No such law is shown, and no such irresistible inference follows from the terms used in conferring the powers of the corporation upon a Board of Directors.

The relator has shown that the directors have concealed from him facts which he had a right to know, and especially in this, that public notice was given to the stockholders of the company to attend a meeting to be held at the office of the company, "to vote upon a reduction of the capital stock, and upon other matters." In order to comply with this call, and to vote understandingly, it was certainly requisite for the relator to know the condition of the affairs and business operations of the company, and be enabled from this knowledge to act for the best interest of the stockholders and of the company. Therefore he has brought himself within the rule which entitles him to relief by showing a clear right and a just and useful purpose to be effected. The court a qua erred in discharging the rule taken by plaintiff against defendant.

The objection that if the relator has the right he claims, it is personal to himself, and can not be exercised by his agent, has no force. The possession of the right in question would be futile, if the possessor of it, through lack of knowledge necessary to exercise it, were debarred the right of procuring, in his behalf, the services of one who could exercise it.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J. Wharton Collens*, for relator and appellant. *Clarke, Bayne & Renshaw*, for respondent and appellee.

Taliaferro, J. The relator owns stock in the Bienville Oil Works Company to the amount of twenty-five thousand dollars. He complains

that the company refuses him access to its books; that he desires to know whether the funds invested by him in the company were faithfully administered by the officers and directors thereof, whether the accounts of the company have been faithfully kept, and also to ascertain its assets and liabilities, verify its stock and property, with the view of taking such lawful action in regard to its administration as his rights and interests might require. The relator appointed a competent agent, well versed in book-keeping, and conversant with the usual routine and details of business in the affairs of corporations, to represent him in the inspection of the books, accounts, and papers of the company for the purpose named.

In a supplemental petition the relator charges that for many years the company and its officers have neglected to comply with the fifth article of its charter, which requires them to make in September of every year and to publish in two newspapers in this city an annual statement of receipts and expenditures, and of the true condition of the company. Moreover, that the company by official notice, published in the Republican newspaper of the seventh of November, 1875, called a meeting of the stockholders "to vote upon a reduction of the capital stock and upon other matters;" which meeting is to be held on the eleventh of December following; that in the meantime the relator is prohibited by the officers and board of the company from ascertaining by examination and verification the true state and condition of the affairs of the company, so as to vote with knowledge of the facts necessary for him to form a satisfactory opinion on the subject.

The relator prayed that a writ of mandamus issue to the company to compel it to comply with his requests in the premises.

An order was rendered that an alternative writ issue, to which the respondents answered—

First—By general denial.

Second—They take the ground that the charter of the company confides all the powers of the corporation to the board of directors, which they contend excludes the relator from the claims set up by him.

Third—That relator's rights in the premises are essentially personal to himself, and can not be exercised by or through his agent.

On the hearing in the court below, judgment was rendered in favor of the respondents, discharging the rule, and the relator appealed.

The relator, in the main, has made good by proof the allegations of his petition. The officers of the company were willing to let him see the last balance sheet or statement they had made; but would not permit him to see the cash book, the journal, or the ledger, by means of which he contends he could have ascertained whether the balance sheet was correct or not. The respondents insist that the relator has no such

right as he contends for, and refer to the clause of the charter which declares that "all the powers of the corporation shall be exercised by a board of directors." They refer to the Civil Code, article 445: "The statutes and regulations which corporations enact for their police and discipline are obligatory upon all their respective members, who are bound to obey them." The case quoted from 6 Sargent & Rawle, p. 505, decided by the Supreme Court of Pennsylvania, announces only the same authority and power to exist in trustees of a certain corporation that are asserted by the charter of the Bienville Oil Works Company to exist in its board of directors. In Angel on Corporations, pp. 428 to 441, it is laid down that a mandamus will not be issued to compel the custodian of corporate documents to allow an inspection or copies to be taken, unless a clear right is shown and some just or useful purpose is to be effected. To this effect seem the principles announced in the English case principally relied upon on the part of the respondents : the case of Rex vs. the Master and Wardens of the Merchant Tailors' Company, 2 Barnwell and Adolphus, 115, 22 Eng. Com. Law Reports, 40. In that case a number of the corporators who were dissatisfied with the management of the company appointed a committee of their body to examine into its affairs. They called upon the clerk, who refused to exhibit the books and papers of the company ; whereupon the corporation and the clerk were called upon to show cause why a mandamus should not be granted commanding them to permit those individuals, their agents, at all seasonable times to inspect and take copies of all records, books, papers, and muniments belonging to the company or relating to the affairs thereof. Affidavits alleging a *belief* of misappropriation of funds, violations of the charter, and other abuses were presented, and the relators closed their application by saying that they had no other wish in desiring an inspection of said charter, by-laws, and other documents, than to see on the part of a body of the members by whom they were authorized to act, how their joint funds were disbursed and that the legal rights and privileges of the members of the company should be enjoyed by them agreeably to their charters. Strong suspicions, it seems, were raised as to the good faith of the parties making the application for mandamus. The clerk of the company stated on oath that he was informed and believed that the demand was presented by a small minority of the members ; that he was also informed and believed from the course pursued that the application was not made *bona fide*, but in order to furnish the parties indirectly with materials, if possible, for disturbing the established constitution of the fraternity and impugning the election of the governing officers.

It was upon this state of facts that the court decided, in that case, that it "would not, on the application of members of a corporate body, grant

State of Louisiana ex rel. Martin vs. the Bienville Oil Works Company.

a mandamus to inspect the documents of the corporation, unless it should be shown that such inspection was necessary with reference to some specific dispute or question pending in which the parties applying are interested ; and that the inspection will then be granted only to such extent as may be necessary for the particular occasion." Thornton, J., said : " It is necessary that there should be some particular matter in dispute between the members or between the corporation and individuals in it ; there must be some controversy, some specific purpose in respect of which the examination becomes necessary." He proceeds further to say that if, in making the application, any purpose could have been pointed out, the parties showing they had an interest in the matter in question, the rule might have been granted, and that the decision then made would not prevent a remedy in future, if any grievance should be stated and shown.

Patteson, J., said in the same case : " The rule must be discharged, from the generality of its terms ;" but he was far from saying that there may not be instances in which a corporator may apply for a mandamus to inspect documents of the kind mentioned, if he can show a specific ground of application and that the granting of it is necessary to prevent his suffering injury or to enable him to perform his duties. But some tangible object must be stated. In the case of Hatch vs. the City Bank, 1 Rob. 470, the plaintiff alleged himself to be a stockholder and director of the City Bank, and that for purposes material to the interests of the institution and of the public he desired to examine the stock-ledger of the bank and also the transfer-book, and that on making application to the president and board of directors to that effect he was refused the privilege requested and denied access to the books he desired to see. He prayed for a writ of mandamus to compel a compliance with his demands. The defendants answered that, conceding the plaintiff's allegations in his petition to be true (which they did not admit), he is not entitled to a writ of mandamus. The defendants answered, further, that by the charter of the City Bank the entire management of its affairs and control of its books and property are confided to a board of directors, who administer the same by a majority, and who have the right of deciding when, by whom, and for what purpose the said books shall be inspected, and that the plaintiff has no right in law to demand the inspection at his pleasure of the said books. The judgment rendered in this case was in favor of the defendants, reversing the judgment appealed from and discharging the rule. The decree was not concurred in by a majority of the members of the court ; one of the judges was interested in the case, and another was absent on account of sickness. Judges Bullard and Garland were of the same opinion, from which Judge Martin dissented and delivered a long and elaborate dissenting opinion, maintaining the right

of the relator to inspect the books of the corporation, and held that he was entitled to the writ of mandamus to enforce the right. He, however, in deference to the views of the two concurring judges, rendered the decree in conformity therewith. In the decision rendered reference is approvingly made by Judge Garland to the English decision we have noticed, and the case of Hatch was doubtless decided upon the authority of that case. But from a review of all the facts in both cases it appears to us clearly to result from these facts that the judgments in both these cases were placed on the ground, not that the relators were not entitled under any state of facts to the relief sought, but that they had failed through want of precision and definiteness in stating some well-defined purpose, some reasonable cause, and showing that they had some interest in the matter; that they had stated no tangible object; that the mere allegation of grounds on which they *believe* the affairs of a corporation are being improperly conducted, that the officers have been unduly chosen, and complaining of mismanagement in some particular instances not affecting the parties themselves, and such like vague charges, will not entitle a party to a writ of mandamus. Mr. Justice Patteson, as we have seen, said in the case that arose in England (22 Eng. Com. Law Reports, 40,) that the rule must be discharged, from the generality of its terms.

In the case at bar the relator is a large stockholder in the Bienville Oil Works Company. He has in the very nature of things, and upon principles of equity, good faith, and fair dealing, the right to know how the affairs of the company are conducted—whether the capital of which he has contributed so large a share is being prudently and profitably employed, or otherwise. He shows that he has been denied this right by the board of directors, who assume that the clause in the charter of the company which declares that "all the powers of the corporation shall be exercised by a board of directors" deprives him of his individual right to know from personal inspection of the books and papers of the company the state of its business affairs. We are not prepared to say that this assumption is logical, and legally deducible from this clause in the charter. We do not see that the existence of the individual right of one of the stockholders claimed by the relator in this case is incompatible with the power vested in the board of directors. If the individual right contended for does not remain, it has been extinguished by some law, clear and explicit in its terms, or by implication necessary and certain. No such law is shown, and no such irresistible inference follows from the terms used in conferring the powers of the corporation upon a board of directors.

The relator, we think, has shown that the directors have concealed from him facts which he had a right to know, and especially in this, that

by a publication in the New Orleans Republican of date the seventeenth of November, 1875, notice was given to the stockholders of the company to attend a meeting to be held at the office of the company on the eleventh December following, " to vote upon a reduction of the capital stock and upon other matters." In order to comply with this call and to vote understandingly, it was certainly requisite for the relator to know the condition of the affairs and business operations of the company and be enabled from this knowledge to act for the best interests of the stockholders and of the company. We think, therefore, he has brought himself within the rule which entitles him to relief by showing a clear right and a just and useful purpose to be effected.

The views we have expressed are fully sustained by the decision rendered by our predecessors in the case of P. J. Coburn vs. the Union Bank of Louisiana, 13 An. 289.

The objection that, if the relator has the right he claims, it is personal to himself and can not be exercised by another, we regard as having no force. The possession of the right in question would be futile if the possessor of it, through lack of knowledge necessary to exercise it, were debarred the right of procuring in his behalf the services of one who could exercise it. Our opinion, for the reasons stated, is that the judgment of the lower court is erroneous.

It is therefore ordered that the judgment appealed from be annulled and reversed. It is further ordered that the mandamus be made peremptory, and that the president and secretary of the Bienville Oil Works Company and the board of directors of the said company or corporation be, through its proper officers, and they are hereby ordered, to afford free access to, and give permission to the relator, P. J. Martin, or to his duly authorized agent, to inspect and examine, within the usual business hours, all the books, records, accounts, and muniments thereto appertaining, belonging to said company, and which relate to the business of said company as an incorporated body, without unnecessarily incommoding the officers and directors of the company; and also to make copies of such papers, accounts, etc., as he may desire, as well as memoranda in writing relating to the same. It is further ordered that the defendants and respondents pay all costs of this suit.

---

HOWELL, J., *dissenting*. I think the relator as stockholder has the right, at seasonable hours, and for a legitimate purpose, to examine the books of the corporation; but it is strictly a personal right, and can be exercised only by the stockholder. In 13 An. 289 it was said: " It must be granted that every partner has the right to inspect the books of the partnership, and the mere fact of incorporation can not destroy that

right, unless it is taken away by some provision of the charter or some law or by-law of the corporation." There is nothing in the record that deprives the relator of this right. But he has no greater right than a partner in this respect, and it can not be successfully urged that a partner can, without the consent of his partners, send a third person as agent to examine the books of the partnership. The affairs of a partnership or corporation, as contained in their books, are private, and not to be known except by consent, or where the production of the books in court becomes necessary.

I therefore dissent to the order as to the agent of relator.

Mr. Justice Morgan concurs in this dissenting opinion.