428 P.2d 686

**TUCSON GAS & ELECTRIC COMPANY, an Arizona Corporation, and Paul L. Abbott, Appellants,**

v.

**Adam SCHANTZ, Appellee.**

No. 2 CA–CIV 336.

Court of Appeals of Arizona.

June 6, 1967.

Rehearing Denied July 6, 1967.

Review Denied Sept. 26, 1967.

Holesapple, Conner, Jones, McFall & Johnson, by A. Y. Holesapple, Tucson, Jennings, Strouss, Salmon & Trask, by Clarence J. Duncan, and Thomas J. Trimble, Phoenix, for appellants.

Lawrence W. Galligan, Tucson, for appellee.

KRUCKER, Judge.

This is an appeal from an order entered in the Superior Court of Pima County, granting the appellee a peremptory writ of mandamus directed to the appellants, ordering them to produce for inspection and copying the proxies held and the ballots cast in the election of the board of directors at the annual meeting of shareholders of

Tucson Gas & Electric Company held on May 11, 1966, in Tucson, Arizona.

The mandamus relief had been sought by the appellee in a suit instituted for that purpose. The suit was grounded upon the theory that the appellee, for a proper purpose, was entitled to have access to these documents, pursuant to his common law right as a shareholder to inspect the books and records of the corporation. The purpose alleged for such inspection was the determination of which shareholders had given their proxies to management, and how the proxies were voted by management, with a view to a possible proxy solicitation in the future by the appellee to bring about a change in the membership of the board of directors of the corporation.

The issue of the propriety of appellee's purpose in wanting to inspect these proxies and ballots was raised in the appellants' responsive pleading filed below. They contended that the appellee's purpose was an improper one, and that such inspection was designed merely to satisfy his curiosity. They further alleged that an examination of the designated records was not necessary or material to appellee's stated purpose. The sole testimony at the trial of the case, which was tried to the court sitting without a jury, was that of appellee. The whole testimony was devoted to appellee's purpose in seeking the inspection. There was no issue presented as to appellee's good faith in demanding inspection of the proxies and ballots, and the trial court found that his purpose was reasonably related to his interest as a shareholder. The court, therefore, concluded that the appellee was entitled to the relief demanded since he had established his clear legal right to inspect the proxies and ballots.

On appeal, appellants do not question the propriety of the trial court's finding with respect to appellee's purpose being a proper one. The sole proposition advanced by them on appeal is that A.R.S. § 10–175 as amended, has superseded the common law and sets forth the entire rights of a stockholder with respect to the inspection of corporate records. They concede, however, that under the common law the documents that were herein sought could have been reached. Therefore, there is one question alone to be considered: Is the right of inspection of a shareholder of an Arizona corporation limited to the books and records set forth in A.R.S. § 10–175?

The appellee's position, which prevailed in the trial court, is that, as a stockholder in the Tucson Gas & Electric Company, he has a common law right in addition to the statutory right, upon the showing of a proper purpose, to inspect all books and records of the corporation with the view to procuring reliable information as to its condition and affairs. A.R.S. § 10–175, as amended in 1960, provides:

"A. The books of a corporation shall be so kept as to show intelligently the original shareholders, their respective interests, the amount which has been paid thereon and all transfers thereof.

"B. The share register or duplicate share register, the books of account, and minutes of proceedings of the shareholders and the board of directors and of executive committees of the directors of every domestic corporation and of foreign corporations keeping any such records in this state shall be open to inspection upon the written demand of any shareholder or holder of a voting trust certificate at any reasonable time, for a purpose reasonably related to his interests as a shareholder or as the holder of such voting trust certificate. Such records also shall be exhibited at a shareholders' meeting at any time when demanded by ten per cent of the shares represented at the meeting. Such inspection by a shareholder or holder of a voting trust certificate may be made in person or by agent or attorney, and the right of inspection includes the right to make extracts. The right of the shareholders to inspect the corporate records may not be limited in the articles or bylaws.

"C. Demand of inspection other than at a shareholders' meeting shall be made

in writing upon the president, secretary, assistant secretary, or general manager of the corporation."[1]

Prior to its amendment in 1960, A.R.S. § 10–175 provided:

"A. The books of a corporation shall be so kept as to show intelligently the original shareholders, their respective interests, the amount which has been paid thereon and all transfers thereof.

"B. *Books, papers and records* of the corporation shall *at all times* during reasonable office hours be subject to inspection by any shareholder. The shareholders of a corporation which holds stock in another corporation shall have the right at all times during office hours to inspect the books, papers and records of such other corporation whose stock is so held. The term 'shareholder' as used in this subsection means and includes any person to whom stock is issued, any person who has subscribed for stock or any person for whose benefit, by contract or otherwise, stock is or is to be set aside or is to be delivered either presently or in the future." (Emphasis added)

 The common law rule as to a shareholder's right of inspection is that every shareholder has the right, by reason of his interest therein, to inspect the books and papers of a corporation at reasonable times and places and for proper purposes. 5 Fletcher, Cyclopedia Corporations § 2214 (1952). It is thus seen that this right is not an absolute one but rather a qualified one. The basis of a shareholder's right to inspect the books and records of a corporation is his ownership of the corporate property and assets through his ownership of shares; as an owner, he has the right to inform himself as to the management of the corporate property by directors and officers who are his trustees in direct charge of the property. Guthrie v. Harkness, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130 (1905); William Coale Development Co. v. Kennedy, 121 Ohio St. 582, 170 N.E. 434 (1930); Wise v. H. M. Byllesby & Co., 285 Ill.App. 40, 1 N.E.2d 536 (1936); State ex rel. Boldt v. St. Cloud Milk Producers' Ass'n, 200 Minn. 1, 273 N.W. 603 (1937); 5 Fletcher, Cyclopedia Corporations § 2213 (1952); State ex rel. Lowell Wiper Supply Co. v. Helen Shop, Inc., 211 Tenn. 107, 362 S.W.2d 787 (1962). As stated in *William Coale Development Co.,* supra:

"Can anything be plainer than the fact that the owner of property has a clear right to inspect his own property? When the owner of property selects an agent or agents to care for and manage his property, how can that act be held to clothe the agent with power to manage the owner as well as to manage the property, and to prevent the owner from even looking at his own property except he do so pursuant to the rules and restrictions promulgated by the agent, who was wholly without power or authority to formulate any such rules or regulations? Are we to forget and abandon all the law pertaining to the relation of principal and agent?"

 Generally speaking, the right of a stockholder extends to all books, papers, contracts, minutes or other instruments from which he can derive any information that will enable him to protect his interest. 5 Fletcher, Cyclopedia Corporations § 2239 (1952); 18 Am.Jur.2d Corporations § 199; Annotations: 22 A.L.R. 24, 82; 43 A.L.R. 783, 788; 59 A.L.R. 1373, 1380; 80 A.L.R. 1502, 1514; 174 A.L.R. 262, 286; 18 C.J.S. Corporations § 506.

 This common law right of inspection is a remedial right which exists independently of statute. State ex rel. G. M. Gustafson Co. v. Crookston Trust Co., 222 Minn. 17, 22 N.W.2d 911 (1946). Statutes

---

1. In paragraph IV of their answer to appellee's complaint, the appellants stated: " * * * deny that petitioner is without a plain, adequate and speedy remedy to obtain the information needed to conduct a future proxy solicitation because the share register has been, is now and will continue to be opened to inspection by him or his attorney at any reasonable time."

providing for a shareholder's right of inspection have been construed as enlarging or extending the common law right rather than as a restriction or abrogation of the right of inspection. 18 Am.Jur.2d Corporations § 179; 18 C.J.S. Corporations § 502; 5 Fletcher, Cyclopedia Corporations § 2215 (1952); Bishop's Estate v. Antilles Enterprises, 252 F.2d 498 (3d Cir. 1958); State ex rel. Grismer v. Merger Mines Corporation, 3 Wash.2d 417, 101 P.2d 308 (1940); State ex rel. McClure v. Malleable Iron Range Co., 177 Wis. 582, 187 N.W. 646, 22 A.L.R. 5 (1922); State ex rel. Lowell Wiper Supply Co. v. Helen Shop, Inc., supra; Texas Infra-Red Radiant Company v. Erwin, 397 S.W.2d 491 (Tex.Civ.App. 1965); Matter of Steinway, 159 N.Y. 250, 53 N.E. 1103, 45 L.R.A. 461 (1899).

Appellants, in support of their position, have cited both to the trial court and to us numerous cases, including State ex rel. Jones v. Ralston Purina Company, 358 S.W.2d 772 (Mo.1962), but they are distinguishable for the reason that the right of inspection sought to be enforced in these cases was the *statutory* right. As stated in *Ralston Purina,* supra:

> "The petition for the alternative writ invoked and was based solely upon that statute, and the case having been heard and determined in the trial court on that theory, it will be reviewed here on the same theory. (Citation omitted) This effectively forecloses consideration of any question with reference to relator's common law right of inspection, there being no such issue in the case." 358 S.W.2d at 775, 776.

It should be noted that A.R.S. § 10–175 prior to its amendment in 1960 afforded shareholders a more absolute right of inspection than the qualified right existing at common law. The 1960 amendment seems to be in keeping with the general trend of recent statutory enactments limiting the shareholder's right of inspection to proper purposes which are reasonably related to the interest of the shareholder. See 5 Fletcher, Cyclopedia Corporations § 2215

(1952); Weck v. District Court of Second Judicial Dist., 408 P.2d 987 (Colo.1966).

Appellants contend that the legislature, by the 1960 amendment of A.R.S. § 10–175, intended to abrogate the common law rule and thereby restrict a shareholder's right of inspection to the specific records designated in the statute. They argue that a reading of A.R.S. § 1–201 and A.R.S. § 1–245 mandates this conclusion. A.R.S. § 1–201 provides:

> "The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people thereof, and not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state."

A.R.S. § 1–245 provides:

> "When a statute has been enacted and has become a law, no other statute or law is continued in force because it is consistent with the statute enacted, but in all cases provided for by the subsequent statute, the statutes, laws and rules theretofore in force, whether consistent or not with the provisions of the subsequent statute, unless expressly continued in force by it, shall be deemed repealed and abrogated."

■■ In support of their position that the legislature intended to restrict the shareholder's right of inspection under the law of this state to only those corporate records specifically enumerated in A.R.S. § 10–175 as amended, appellants have submitted to this court an affidavit of a Yuma County state senator in the Arizona legislature during the 24th legislature, second session (1960) (during which session the subject statute was enacted). Appellee quite correctly disputes the propriety of our consideration of this affidavit. See State v. Kruchten, 101 Ariz. 186, 189, 417 P.2d 510 (1966). Furthermore, the testimony or opinions of individual members of the legislative body are not admissible. Barlow v.

Jones, 37 Ariz. 396, 294 P. 1106 (1930); Bagg v. Wickizer, 9 Cal.App.2d 753, 50 P.2d 1047 (1936). As stated in *Barlow*, supra, at page 399, of 37 Ariz., at page 1107 of 294 P.:

"The appellees introduced the testimony of one of the members of the Legislature which passed the law in controversy to the effect that it was intended to omit from the rights conferred on a class B licensee the right to take small game, but this testimony was clearly incompetent. If the intent of the Legislature is to be shown by inquiring of the members what was intended, it would be necessary to interrogate all the members of both the Senate and the House. Besides being an interminable job, it is not conceivable that a common intent would be the result. The intent of the Legislature can only be determined by the language used, aided by the canons and rules of construction founded upon reason and experience. A legislative enactment cannot be amended or changed either by the insertion or the elimination of words to conform with an intent proven by the testimony of the members of the enacting body."

Where a statute revises the common law and is clearly designed as a substitute therefor, the common law is repealed. However, statutes are not deemed to repeal the common law by implication unless the legislative intent to do so is clearly manifested. 15 Am.Jur.2d Common Law § 16; 15A C.J.S. Common Law § 12 a. Where a right exists at common law, such as the right of inspection of corporate records by a shareholder, and a statute is enacted likewise providing a remedy, such statutory remedy is merely cumulative to the common law remedy unless it explicitly provides that it shall be exclusive. State ex rel. G. M. Gustafson Co. v. Crookston Trust Co., supra; 50 Am.Jur. Statutes § 598; 10 Cal.Jur.2d Common Law § 4; Saala v. McFarland, 63 Cal.2d 124, 45 Cal. Rptr. 144, 403 P.2d 400 (1965); Gray v. Sutherland, 124 Cal.App.2d 280, 268 P.2d

754 (1954). It is true that A.R.S. § 10–175 is only partially declaratory of the common law. However, the mere fact that a statute partially codifies the common law does not necessarily abolish the remainder of the common law rule. Williams v. State, 83 Ariz. 34, 315 P.2d 981 (1957). We hold, therefore, that since the legislature has not clearly manifested its intent to repeal the common law rule nor specifically declare the statutory remedy to be exclusive, a shareholder's common law right of inspection, which exists independently of statute, is not abrogated, and the trial court correctly so held. The following language in *Steinway*, supra, is pertinent:

"We do not think the statute now in force is exclusive, or that it has abridged the common-law right of stockholders with reference to the examination of corporate books. By enabling a stockholder to get some information in a new way, it did not impliedly repeal the common-law rule which enabled him to get other information in another way; for the courts do not hold the common law to be repealed by implication, unless the intention is obvious. By simply providing an additional remedy the existing remedy was not taken away. The statute merely strengthened the common-law rule with reference to one part thereof, and left the remainder unaffected. It dealt with but a single book, and as to that it amplified the qualified right previously existing by making it absolute and extending it to judgment creditors. The stock book has no relation to the business carried on by a corporation; and the change was doubtless made to enable stockholders to promptly learn who are entitled to vote for directors, and judgment creditors to learn who are liable as stockholders for a failure to comply with the provisions of the act. The statute is silent as to the other books, and provides no system of inspection as a substitute for the right of examination at common law. The provision for a report from the treasurer was not designed to take away an old

right, but to give a new one, not as a substitute but as an addition." 53 N.E. 1103 at 1107.

For the reasons herein stated, the judgment is affirmed.

HATHAWAY, C. J., and NORMAN S. FENTON, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge NORMAN S. FENTON was called to sit in his stead and participate in the determination of this decision.